**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Nicholas Abbot, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:25-cv-12004 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Defendant Boom Shakalaka, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nicholas Abbot brings this putative class action against Defendant Boom Shakalaka, Inc. ("Boom Fantasy"). ECF 1. Defendant moves to compel Plaintiff to arbitrate pursuant to its terms of service under the Federal Arbitration Act, and to stay this action pending the conclusion of arbitration proceedings. ECF 12. For the reasons discussed below, Defendant's motion is granted.

**Background**

Boom Fantasy owns and operates a fantasy sports app that allows users to participate in daily "pick 'em" contests. ECF 13 at 2. On November 28, 2024, Plaintiff created a Boom Fantasy account using the Boom Fantasy mobile app, and subsequently logged into that account on several occasions between November 2024 and February 2025. *See* ECF 13. When Plaintiff opened the app, he would have been presented with the following sign up/log in page:



ECF 13-2. As shown, the Boom Fantasy mobile app sign up/log in page includes the following elements on a black background, listed here in descending order: the Boom Fantasy logo; a brightly colored image advertising a new player offer; an option for users to create or log into their account using either a phone number or email address and a corresponding entry field; a blue "sign up" button; "log in" and "view lobby" buttons; and a note stating that "[b]y signing up or logging in, you agree to our Terms of Service and Privacy Policy" (the "TOS note"). *Id.* The underlined words "Terms of Service" and "Privacy Policy" are hyperlinks. *See* ECF 13-1 at ¶ 9.

Clicking on the "Terms of Service" hyperlink opens Boom Fantasy's Terms of Service (the "TOS"). *Id.* The first three paragraphs of the TOS notifies users, in capitalized letters, that the TOS contains an arbitration clause:

> Last update posted: 1/25/24
>
> Boom Fantasy is not associated with Apple, Inc. Apple does not sponsor and is not involved in any way with Boom Fantasy contests.
>
> IMPORTANT NOTICE: THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN SECTION 15.

ECF 13-3 at 1. The arbitration clause contained in Section 15 of the TOS provides, in pertinent part:

> **15. Binding Arbitration and Class Action Waiver**
>
> PLEASE READ THIS SECTION CAREFULLY – IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT...
>
> **Binding Arbitration**
>
> …all claims arising out of or relating to these Terms (including their formation, performance and breach), the parties' relationship with each other and/or your use of the Service shall be finally settled by binding arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules and the supplementary procedures for consumer related disputes of the American Arbitration Association (the "AAA"), excluding any rules or procedures governing or permitting class actions.
>
> The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms, including, but not limited to any claim that all or any part of these Terms are void or voidable, or whether a claim is subject to arbitration…
>
> **30-Day Right to Opt Out**
>
> You have the right to opt-out and not be bound by the arbitration and class action waiver provisions set forth above by sending written notice of your decision to opt-out… within 30 days of your first use of the Service, otherwise you shall be bound to arbitrate disputes in accordance with the terms of those paragraphs…

3

*Id*. at 14-16.

Defendant asserts, and Plaintiff does not dispute, that Plaintiff did not exercise his opt-out right. *See* ECF 13 at 4; *see generally* ECF 19. Plaintiff then commenced this putative class action. *See* ECF 1. Plaintiff's complaint includes three claims: (1) violation of the Illinois Loss Recovery Act, 720 ILCS 5/28-8; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*; and (3) restitution or unjust enrichment. *Id*. Plaintiff alleges that Boom Fantasy's daily "pick 'em" contests are sports wagers prohibited by Illinois state law and that Boom Fantasy failed to disclose that its contests were unlawful sports wagers. *Id*. Defendant now moves to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, pursuant to the arbitration clause in the Boom Fantasy TOS. ECF 13.

## Legal Standard

Under the FAA, arbitration clauses in a contract "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "[C]ourts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013).

A court will only compel arbitration when there is: "(1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024). "Whether an agreement to arbitrate has been formed is governed by state-law principles of contract formation." *Domer v. Menard, Inc*., 116 F.4th 686, 694 (7th Cir. 2024). "While the FAA does not provide the

4

evidentiary standard applicable for determining whether to compel arbitration," the Seventh Circuit has "analogized the standard needed to that required at summary judgment. A district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if no genuine dispute of material fact exists as to the formation of the agreement." *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609, 618 (7th Cir. 2024).

### Discussion

The parties' disputes here are narrow; they dispute only: (a) whether an agreement to arbitrate was formed; (b) whether gateway issues of enforceability fall within the scope of the arbitration agreement; and (c) to the extent any enforceability issues are within the purview of this Court, whether the arbitration agreement is enforceable.

### A. Formation of the Arbitration Agreement

"As the Supreme Court repeatedly has emphasized, arbitration is a creature of contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016). It is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). For purposes of determining formation, courts categorize online contracts as either: (1) clickwrap, which presents users with the terms of use and then requires users to affirmatively indicate assent by clicking a box; (2) browsewrap, which posts the terms of use on the website via a hyperlink at the bottom of the page or screen; or (3) hybrid-wrap, which posts the terms of use on the website via a hyperlink and prompts the user to manifest assent by clicking a button. *See Domer*, 116 F.4th at 694-695. A hybrid-wrap agreement, such as the one at issue here, is enforceable under Illinois law only if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be

5

bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at 695.

"Although these questions may involve underlying facts, they are questions of law. Rather than resolving questions of fact, we undertake a fact-intensive *legal* analysis." *Id*. (emphasis added). For this reason, Plaintiff's argument that his agreement to arbitrate is itself a disputed issue of fact reserved for trial fails. *See* ECF 19 at 9. Plaintiff's disputes concern the elements of and defenses to contract formation; he does not, for example, allege that the arbitration agreement did not exist in Boom Fantasy's TOS at the time Plaintiff created or signed into his account, and he does not dispute Boom Fantasy's reconstruction of the sign up/log in page or raise any other factual issue. *Contrast id.* at 7-9 *with Kass v. Paypal, Inc.*, 75 F.4th 693, 697 (7th Cir. 2023) ("The issue was less clear-cut with plaintiff Kass. The mandatory arbitration provision had not been in the earlier User Agreement Kass accepted when she created her PayPal account in 2004."). Because Plaintiff does not raise a genuine dispute of material fact, the Court "may conclude as a matter of law that parties did or did not enter into an arbitration agreement." *Wallrich*, 106 F.4th at 618.

### 1. Reasonably Conspicuous Notice

Under Illinois state law, courts evaluate notice from the objective perspective of a "reasonable online shopper—that is, a person who is neither an expert nor a novice with technology." *Domer*, 116 F.4th at 695. Courts consider five factors in determining whether a user has received reasonable notice: "(1) the simplicity of the screen; (2) the clarity of the disclosure; (3) the size and coloring of the disclosure's font; (4) the spatial placement of the hyperlink; and (5) the temporal relationship to the user's action." *Id*. "No single factor is dispositive: the question is whether the website provided reasonable notice in light of the whole webpage." *Id*.

6

Taken together, these factors here indicate that the TOS note put a reasonable person on notice that there were terms incorporated in creating and logging into a Boom Fantasy account and that, by creating and logging into that account, they were agreeing to those terms. The Boom Fantasy sign up/log in screen is uncluttered. Even though the page features a vibrant advertisement, it is not "a visually bewildering screen." *Domer*, 116 F.4th at 699. The TOS note itself is clear: it is a single, concise sentence and no scrolling is required to view it. *See Johnson v. Uber Tech., Inc.*, 2018 WL 4503938, at *4 (N.D. Ill. Sept. 20, 2018) (finding a terms of service note put a reasonable person on notice where there "no scrolling was required to view it"). The language of the TOS note ("By signing up or logging in…") and the spatial and temporal position of the TOS note (just below the "sign up" and "log in" buttons) indicates that the TOS is "attached" to the action of signing up or logging into an account. *See Domer*, 116 F.4th at 697 (disclosure stating "Please note: . . . By submitting your order you accept our Terms of Order" was a clear prompt that provided reasonable notice); *see also Fitzpatrick*, 2024 WL 4555337, at *4 (disclosures "on the same page as" and "directly below" the relevant buttons were "spatially and temporally connected to the required act that manifests assent"). Finally, given the size, style, and color of the TOS note, it is as legible as other text on the screen, and the hyperlinked text is underlined, offsetting it from non-hyperlinked text. *See Fitzpatrick*, 2024 WL 4555337, at *4 (underlining combined with other design features set text apart and alerted users to terms).

Plaintiff's citation to *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F.Supp.3d 1089 (C.D. Cal. 2023), which considered similar facts and found that notice was not reasonably conspicuous, is unavailing in light of that same District's holding in *Huynh v. Boom Shakalaka, Inc.*, 814 F. Supp. 3d 1141 (C.D. Cal. 2026). In *Huynh*, the Central District of California analyzed the exact sign up/log in page at issue here, under comparable state contract law. *See Huynh*, 814

7

F. Supp. 3d at 1148-49 (citing *Keebaugh v. Warner Bros. Ent., Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (a sign-in wrap agreement is enforceable under California law when it provides "reasonably conspicuous notice of the terms to which the consumer will be bound" and some action is taken by the consumer "such as clicking a button or checking a box" which "unambiguously manifests" agreement)). That court held that "[t]he hyperlink is readily apparent as it is underlined, the same color as other clickable aspects, and is set off with sufficient empty space around it to stand out... In addition, it is displayed directly below the login button by which the Terms are accepted... Indeed, upon signing up or logging in, the App notifies users that '[b]y signing up or logging in, you agree to our Terms of Service and Privacy Policy.'" *Id.* at 1149. This Court agrees with the Central District of California's analysis.

Plaintiff does not attempt to distinguish *Huynh*, or other decisions in this District which analyzed similar facts under *Domer* and came to the same conclusion as the *Huynh* court. *See, e.g., Johnson*, 2018 WL 4503938, at \*4 (statement that "[b]y creating an Uber account, you agree to the Terms of Service & Privacy Policy" placed a reasonable person on notice where the "statement appeared in an easy-to-read font on an uncluttered screen, and no scrolling was required to view it" and the "words 'Terms of Service & Privacy Policy' in the statement also served as a hyperlink, which appeared in a larger-sized font, enclosed in an outlined box"). And the other cases Plaintiff relies upon are readily distinguishable. *See Johnson v. Human Power of N Company*, 767 F.Supp.3d 845, 852 (N.D. Ill. 2025) (disclosure only told "the consumer that by registering to receive messages they are agreeing to receiving recurring messages, without any indication that they are agreeing to the Defendant's terms"); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176, 1179 (9th Cir. 2014) (browsewrap agreement).

**2. Manifestation of Assent**

Because Boom Fantasy provided reasonably conspicuous notice of the TOS, Plaintiff unambiguously manifested assent to those terms when he created an account and subsequently logged into that account. *See Domer*, 116 F.4th at 699 ("[T]he Menards notice was reasonably conspicuous, so [plaintiff] manifested her assent to accept the Terms of Order by going through with the purchase."); *see also Huynh*, 814 F. Supp. 3d at 1149 ("Plaintiff's argument vis-à-vis assent similarly fails. The Ninth Circuit has recently held that, '[a] user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement'… And that is precisely found here through the language in the Boom App that '[b]y signing up or logging in, you agree to our Terms of Service and Privacy Policy.'").

*     *     *

In sum, as a matter of law, the parties formed an agreement to arbitrate: Boom Fantasy provided Plaintiff with reasonably conspicuous notice of the arbitration agreement, and Plaintiff manifested assent to that agreement by creating and logging into his Boom Fantasy account.

**B. Scope of the Arbitration Agreement**

Having determined that an agreement to arbitrate was formed, the Court next addresses the the scope of that agreement. The arbitration agreement here contains a delegation clause, which provides that "[t]he arbitrator . . . shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms, including, but not limited to any claim that all or any part of these Terms are void or voidable, or whether a claim is subject to arbitration." ECF 13-3 at 15. The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties

9

have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). The parties do not dispute that the language of the delegation provision constitutes "clear and unmistakable evidence" of "the parties' agreement . . . [to] delegate threshold arbitrability questions to the arbitrator." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019). Instead, the parties dispute the scope of that clause under Supreme Court precedent.

The Supreme Court has distinguished between challenges to contract formation and enforcement in analyzing whether a challenge to a contract containing an arbitration agreement must be first heard by a court. As discussed above, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock*, 561 U.S. at 296. However, where a dispute concerns the validity of the contract, it may be permissibly delegated to the arbitrator pursuant to a delegation clause. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (differentiating between formation and validity challenges). This is because "an arbitration [or delegation] provision is severable from the remainder of the contract [and] . . . a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70-71. In that case, "[t]he challenge [to the enforceability of the contract] should therefore be considered by an arbitrator, not a court." *Buckeye*, 546 U.S. at 445-46.

Plaintiff argues that his unconscionability and illegality challenges concern formation and thus are not delegable. But under Illinois law, unconscionability and illegality are defenses to the enforceability of a contract, not to its formation. *See, e.g.*, *Gamboa v. Alvarado*, 407 Ill.App.3d 70, 941 N.E.2d 1012, 1017 (2011) ("Illegality of contract is . . . a defense to actions seeking enforcement."); *Arbogast v. Chicago Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526, 194

10

N.E.3d 534, 547 (2021) ("[U]nconscionability, which is a defense to the enforcement of a contract or its terms[,] . . . cannot arise unless a contract is found to exist first."). For this reason, Plaintiff's citation to *Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal.4th 394, 926 P.2d 1061 (1996) does not support his argument. *See id.* 1074 (discussing fraud in the execution (formation) and differentiating it from fraud in the inducement (validity)). Plaintiff's disputes are thus not categorically precluded from delegation. Defendant, for its part, stakes out the opposite extreme and argues that any and all issues concerning the unconscionability or illegality of the TOS fall within the scope of the arbitration agreement. *See* ECF 13 at 11-14. This paints the scope of the delegation clause too broadly; rather, the Court must first address challenges directly to validity of the arbitration agreement before ordering the parties to comply with it. *See Rent-A-Center*, 561 U.S. at 71. This is because an arbitration agreement is not "unassailable"; "[i]f a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Id*.

The Supreme Court in *Buckeye* outlined three types of validity challenges: (a) "challenges specifically [to] the validity of the agreement to arbitration"; (b) "challenges [to] the contract as a whole . . . on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced)"; and (c) challenges to the contract as a whole "on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." 546 U.S. at 444-46 & n.1. The Supreme Court subsequently clarified that, "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v Suski*, 602 U.S. 143, 151 (2024). Therefore, where "[t]he crux of the complaint is that the contract as a whole (including is arbitration provision) is rendered invalid by [a] usurious finance charge" or where a contract contains "many elements of alleged

11

unconscionability applicable to the whole contract" but which do "not affect the agreement to arbitrate alone," the matter of enforceability is delegated to the arbitrator. *Buckeye*, 546 U.S. at 444; *Rent-A-Center*, 561 U.S. at 71. But "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision," such as in the case of fraudulent inducement, "a court must address that challenge." *Coinbase*, 602 U.S. at 151 (citing *Rent-A-Center*, 561 U.S., at 71 (discussing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).

Several of Plaintiff's challenges are not directed at the arbitration agreement. First, Plaintiff's arguments concerning the unconscionability of the TOS's liability disclaimer and the indemnification clause cannot be said to either "directly challenge the arbitration or delegation clause" or "appl[y] 'equally' to the whole contract and to an arbitration or delegation provision." *Coinbase*, 602 U.S. at 151. Second, Plaintiff's argument that the arbitration agreement is unenforceable because Boom Fantasy's TOS are void because it is based on money or value obtained through illegal gambling fails. *See* ECF 19 at 4. This challenge does not apply "equally" to the TOS and to the arbitration agreement because the arbitration agreement is supported by its own valid consideration: "a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement." *Gen. Motors Acceptance Corp. v. Johnson*, 354 Ill. App. 3d 885, 822 N.E.2d 30, 37 (2004); *see also Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir. 1997) ("Often, consideration for one part's promise to arbitrate is the other party's promise to do the same."); *cf.* 720 ILCS 5/28-7(a) (contracts "where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained in violation of [Illinois's criminal gambling statutes] are null and void").[1] As "[t]he crux of [Plaintiff's] complaint is that

---

[1] Plaintiff cites *Macon County Greyhound Park, Inc. v. Hoffman*, 226 So.3d 152 (Ala. 2016), but it is factually distinguishable. There, the Alabama Supreme Court held that "when the agreement to arbitrate is itself based on gambling consideration, [it] is unconscionable." *Id*. at 169. The arbitration agreement here does not tie arbitration to illegal gambling. *See, e.g., Hall v.*

the contract as a whole (including its arbitration provision) is rendered invalid" for illegality by Illinois state law, "the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 444-46; *see also Ball v. Skillz Inc.*, 2020 WL 6685514, at *5 (D. Nev. Nov. 12, 2020); *Boyle v. Sweepsteaks Ltd.*, 2025 WL 1674480, at *5 (C.D. Cal. May 19, 2025).

As such, these disputes must be first considered by the arbitrator pursuant to the delegation clause of Boom Fantasy's arbitration agreement. Plaintiff's remaining challenges, however, are within the purview of this Court.

**C. Enforceability of the Arbitration Agreement**

Plaintiff's surviving challenges to the enforceability of the arbitration agreement concern unconscionability. Under Illinois state law, "[p]rocedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor v. Hyundai Motor America*, 222 Ill.2d 75, 854 N.E.2d 607, 622 (2006). "Substantive unconscionability applies where the contract terms are so one-sided that they oppress or unfairly surprise an innocent party and create an overall imbalance in the obligations and rights imposed by the bargain and a significant cost-price disparity." *Kinkel v. Cingular Wireless, LLC*, 223 Ill.2d 1, 857 N.E.2d 250 (2006). "A contract or clause may be declared unenforceable based on either procedural or substantive unconscionability or a combination of both." *Id*. The party asserting

---

*Sweepsteakes Ltd*., 2026 WL 701560, at *4 n.3 (M.D. Ala. Mar. 12, 2026) (observing that *Macon* only extends to arbitration agreements that expressly tie the arbitration agreement to illegal gambling or when the illegality of the gambling at issue is undisputed); *Huynh*, 814 F. Supp. 3d at 1148 (same); *Collins v. High 5 Entertainment, LLC*, 2026 WL 1453840, at *3 (N.D. Ill. May 22, 2026) (same).

13

unconsciousability bears the burden of proving it. *Razor*, 854 N.E.2d at 622. Plaintiff here failed to do so.

First, even assuming, but not deciding, that the TOS is a contract of adhesion, Plaintiff's argument that the arbitration agreement is procedurally unconscionable merely because it is a contract of adhesion is unavailing. The Illinois Supreme Court has held that "[s]uch contracts . . . are a fact of modern life" and that "[i]t cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Kinkel*, 857 N.E.2d at 266. Plaintiff here does not identify any "additional fact particular to this case [which would] tip[] the balance in [his] favor." *Razor*, 854 N.E.2d at 623. Without more, simply asserting that the TOS is a contract of adhesion is insufficient to show procedural unconscionability. *See, e.g.*, *Kinkel*, 857 N.E.2d at 266 (finding that an arbitration agreement was a contract of adhesion, and had "a degree of procedural unconscionability" because it "did not inform [the plaintiff] that she would have to pay anything at all towards the cost of arbitration").

Second, Plaintiff's argument that the arbitration agreement is "buried deep within a lengthy, single-spaced boilerplate agreement" is not convincing. ECF 19 at 11. The third paragraph of Boom Fantasy's TOS informs users, in uppercase letters, that the TOS is subject to an arbitration clause, and tells users exactly where to find it. All a user need do is scroll to the bolded heading "Section 15."

Third, Plaintiff's argument that the arbitration agreement is unconscionable because it "exploits" the "unique[] vulnerab[ility]" of gamblers as "many users struggle with addictive behaviors" fails. ECF 19 at 11. In determining whether an agreement is procedurally unconscionable, Illinois courts consider "whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the

14

circumstances surrounding the formation of the contract." *Phoenix Ins. Co. v. Rosen*, 242 Ill.2d 48, 949 N.E.2d 639, 647 (2011). Plaintiff does not allege that he himself struggles addictive behaviors, only that "many users" do. Plaintiff thus does not challenge a "circumstance[]" surrounding the formation of the contract." *Id*.

Lastly, the arbitration agreement is not unconscionable merely because it contains a unilateral change-in-terms provision. Illinois courts have repeatedly held that an arbitration agreement that contains a change-in-terms provision does not lack mutuality. *See Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *5 (N.D. Ill. May 15, 2020) (observing that "Illinois [c]ourts allow parties to agree to authorize one party to modify a contract unilaterally . . . As long as the parties agree that one party may unilaterally modify the terms of the contract, a unilateral modification is not illusory, and courts frequently enforce those modifications," and collecting cases).

In sum, Plaintiff's challenges to the validity of the arbitration agreement fail.

### Conclusion

Defendant's motion to compel arbitration and stay proceedings pending arbitration is granted. The parties shall file a joint status report updating the Court on the status of this case on either November 24, 2026 or within 14 days of the conclusion of the arbitration proceedings, whichever comes first.

15

**SO ORDERED.**

**ENTERED: July 24, 2026**

_____

**HON. JORGE L. ALONSO**
**United States District Judge**